UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DOUGLAS PEARL,

                                                                    **REPORT AND**
                                                                    **RECOMMENDATION**

                            Plaintiff,
                                                                    07-CV-1337
                                                                    (LEK/VEB)
              V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                            Defendant.
_____

## I. INTRODUCTION

        In May of 2005, Plaintiff Douglas Pearl filed an application for disability and disability

insurance benefits ("DIB") under the Social Security Act.  Plaintiff alleges that he has been

unable to work since March 11, 2004, primarily due to work-related injury to his right ankle

and pain resulting from that injury.  Plaintiff's application for benefits was denied by the

Commissioner of Social Security.

        Plaintiff, through his attorney, Stephen J. Mastaitis, Jr., Esq., commenced this action

on December 21, 2007, by filing a Complaint in the United States District Court for the

Northern District of New York. (Docket No. 1).   Plaintiff seeks judicial review of the

Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

         On August 24, 2009, the Honorable Norman A. Mordue, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant

to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 26).

        For the reasons set forth below, this Court finds no reversible error and finds that

substantial evidence supports the ALJ's decision.  This Court further finds that a remand is not warranted based upon "new evidence" provided by the Plaintiff.  Thus, this Court recommends that the decision of the Commissioner be affirmed.

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  Plaintiff applied for disability benefits and DIB on May 9, 2005, alleging that he had been unable to work since March 11, 2004.  (T[1] at 19, 66, 250).  The application was denied on July 25, 2005. (T at 19).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on September 20, 2005. (T at 19).  On March 16, 2007, Plaintiff appeared with counsel at a hearing before ALJ Robin Arzt in Albany, New York.  (T at 241).

On March 30, 2007, the ALJ issued a written decision denying Plaintiff's application for benefits.  (T at 19-26).  The ALJ's decision became the Commissioner's final decision on October 26, 2007, when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (T at 3-6).

Plaintiff commenced this action on December 21, 2007. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on February 20, 2009. (Docket No. 18).  The Commissioner filed a Brief in opposition on July 1, 2009. (Docket No. 25).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No.8).

accompanied their briefs with a motion for judgment on the pleadings.[2]

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2010. (T at 21).  The ALJ determined that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision.  (T at 21).  The ALJ found that Plaintiff has the following "severe" impairments: a residual right ankle and foot disorder since October 2001 and a comminuted, displaced Pilon fracture of the right distal tibia and fibula and corrective surgeries.  (T at 21).  However, the ALJ concluded that,

---

substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

as of the date last insured, Plaintiff does not have an impairment or combination of impairments that meets or equals the level of severity of any disabling condition set forth in 20 CFR Part 404, Subpart P, Appendix 1 of the applicable Social Security Act Regulations (the "Regulations").  (T at 21).

After reviewing the medical evidence, the ALJ concluded that, through the date last insured, Plaintiff had the residual functional capacity to "lift and carry up to ten pounds at a time, [and] walk and stand up to two hours out of an eight hour day." (T at 21).  The ALJ further found that Plaintiff could occasionally push and pull light weight objects, and occasionally bend and stoop. (T at 21).  The ALJ found this residual functional capacity to be "consistent with an ability to do sedentary work." (T at 21).

The ALJ concluded that Plaintiff is not able to perform his past relevant work as a sheet metal worker.  (T at 25).  The ALJ noted that Plaintiff was 43 years old on the alleged disability onset date and 46 at the time of the hearing, thereby qualifying him as a "younger individual." (T at 25).  The ALJ determined that given Plaintiff's age, education (Associate's degree), past relevant work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.  (T at 26).  Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined under the Act.  (T at 26).

As noted above, the ALJ's decision became the Commissioner's final decision on October 26, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 3-6).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  He offers

6

two principal arguments in support of that position.  First, Plaintiff asserts that the ALJ improperly failed to credit his allegations of disabling pain.  Second, Plaintiff argues that the Appeals Council did not properly consider new, material evidence tending to support Plaintiff's claims of disability.  Both of these arguments will be addressed in turn.

### a.    Credibility Determination

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

First, the adjudicator must consider whether there is an underlying medically

7

determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that he was employed as a sheet metal worker from 1982 through March 11, 2004. (T at 250). He indicated that his employment record was "a little spotty sometimes," with occasional periods of unemployment. (T at 250). In October 2001, Plaintiff injured his left ankle when he fell off of a roof while working. (T at

8

251).  Plaintiff's fall causes a right pilon fracture or a "significantly, comminuted, displaced distal diaphyseal fracture" of the right tibia and fibia with extension of the ankle. (T at 95, 202).  Jeffrey Lozman, an orthopedic surgeon, repaired the ankle with open reduction and internal fixation surgery on October 9, 2001. (T at 108-125).  Plaintiff returned to work in February 2002, first in a clerical position and later as a field supervisor, and worked in that capacity until March of 2004, when he was laid off.  (T at 251-53).  Since that time, Plaintiff worked sporadically and part-time as a cashier. (T at 255). Plaintiff developed "[c]law toe deformities" or "hammertoes" (T at 106, 108), which were surgically repaired by Dr. John A. DiPreta in September of 2004. (T at 99).

Plaintiff testified that he has pain in his ankle "all the time" and occasional numbness in his toes. (T at 256).  He does not use a cane to walk, but thinks it might be helpful "at some point." (T at 257).  He does not wear a brace or support on his ankle. (T at 257). Plaintiff testified that he receives partial pain relief from prescription Lyrica and a topical compound, but complained of feeling "foggy" as a side effect of the medication. (T at 257-58).  Plaintiff experienced difficulty sleeping as a result of ankle pain. (T at 269).

In the Spring of 2006, Plaintiff began studying chemical dependency counseling. (T at 258-59).  Plaintiff attended classes as a full-time student, making the Dean's List in two semesters, and planned to pursue a Bachelor's degree. (T at 259).

In terms of physical activities, Plaintiff testified that he can "easily" walk an eighth or a quarter of a mile, but described walking as "basically uncomfortable." (T at 260, 262). He can stand for ten (10) minutes and stand for up to 30 minutes with difficulty. (T at 260).  He explained that he does not have any difficulty sitting, provided he has "some room" to move his foot "around." (T at 261).  Plaintiff explained that he would need to move his foot due

to "sharp pains" in his ankle. (T at 264).  Plaintiff has no problems using his hands and arms. (T at 261).  He can drive a car, but is cautious about using his right foot for sudden braking. (T at 267).

Plaintiff argues that the ALJ improperly discounted his testimony of disabling pain, which he contends was supported by the underlying record.  Further, Plaintiff contends that the ALJ should have given consideration to the impact of depressive symptoms on his ability to perform work. In support of these arguments, Plaintiff notes the following: During a February 2007 visit to his treating physician's office, he told a nurse practitioner that he was having a "tough time" and considering having his leg amputated because of the effect it was having on his quality of life. (T at 165).

Dr. Edward Apicella, Plaintiff's treating pain management specialist, testified that depression was common in cases of chronic pain and that Plaintiff appeared "depressed" and "teary-eyed" and reported sexual dysfunction. (T at 165).  Plaintiff told Dr. Apicella that his ankle pain as a "6 to 9 [to] over 10 depending on the day, the weather, and the physical activity." (T at 166).  Plaintiff was forced to discontinue outdoor activities such as running, hiking, and skiing, which he had previously enjoyed. (T at 167).  Dr. Apicella described Plaintiff as a "stoic guy" who tends to downplay his pain symptoms. (T at 168).

Dr. DiPreta, Plaintiff's orthopedic surgeon, opined in November 2004, that Plaintiff will "no doubt" have "limitations as a result of his ankle injury." (T at 97).  As of that point in time, Dr. DiPreta indicated that Plaintiff could work "no more than a four hour day." (T at 97).  Dr. Preta further opined that Plaintiff should not walk or stand more than one hour at a time, climb ladders, or lift more than fifteen pounds. (T at 97).  At a follow-up visit in March 2005, Plaintiff complained of "an aching sensation in the ankle," which was noted

10

to be "constant." (T at 96).   Dr. DiPreta anticipated "continued pain regardless" of the ultimate treatment. (T at 96).

The ALJ correctly articulated the legal standard outlined above for assessing a claimant's credibility. (T at 22-23).   The ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to produce disabling pain, as alleged by Plaintiff. (T at 24).   However, the ALJ determined that Plaintiff's testimony concerning the intensity, persistence, and limited effects of his symptoms did not support a finding that he is disabled. (T at 24).   This Court finds that the ALJ's decision in this regard was supported by substantial evidence.

First, contrary to Plaintiff's suggestions, none of his treating physicians opined that Plaintiff was fully disabled.  Dr. DiPreta opined that he had "some concerns" about Plaintiff returning to his job as a sheet metal worker and recommended that Plaintiff attend a job reeducation or "VESID" program. (T at 97).[4]  Although Dr. DiPreta stated that Plaintiff was limited to a four hour work day, there is no indication that he considered this restriction permanent. (T at 97).   Indeed, Dr. DiPreta noted that the purpose of this work hour restriction was to allow Plaintiff "to try to see what his limitations are." (T at 97).   Further, in November 2005, Dr. DiPreta specifically found that Plaintiff was "*not* totally disabled from the entire work force . . . " and "would be best suited for a sedentary position." (T at 148) (emphasis added).   Dr. DiPreta concluded that Plaintiff was totally disabled "from his previous means of employment" as a sheet metal worker." (T at 141).   The ALJ held the same views on this assessment and his finding that Plaintiff retained the residual functional

---

[4]VESID refers to New York State's Vocational and Educational Services for Individuals with Disabilities program.

11

capacity to perform sedentary work is supported by, and indeed entirely consistent with, the assessment of Plaintiff's treating orthopedic surgeon.

Moreover, Dr. Lozman, the orthopedic surgeon who performed the initial surgery to repair Plaintiff's ankle, did not indicate that Plaintiff was totally disabled and, in fact, opined that wearing a splint or ankle brace and finding a job that did not put excessive strain on his foot were "the ways to go." (T at 103).

Further support for the ALJ's assessment is found in the orthopedic evaluation conducted by consultative examiner Amelita Balagtas, M.D.  Dr. Balagtas opined that Plaintiff would have "some limitations in activities that require prolonged standing and walking," but noted otherwise unremarkable clinical findings. (T at 128-130).

Plaintiff's suggestion that the ALJ erred by failing to consider his depressive symptoms is unavailing.  No evidence of depression was submitted to the ALJ.  Dr. Apicella's testimony, which was submitted to the Appeals Council, but not the ALJ, indicated only isolated incidents of depressive symptoms. (T at 164-65).  The record does not contain any indication that Plaintiff received psychiatric treatment for depression or that any acceptable medical source actually diagnosed Plaintiff as suffering from depression.

Plaintiff also argues that the ALJ relied too heavily on the orthopedic aspect of Plaintiff's impairment and failed to properly account for the allegedly disabling effect of his neuropathic impairment.  This argument is based upon deposition testimony from Dr. Apicella and Dr. Andrew Dubin, which was submitted to the Appeals Council, but not presented to the ALJ.  For the reasons discussed below in the section entitled "New Evidence", this Court finds that the ALJ's decision need not be disturbed based upon this new evidence.

Lastly, Plaintiff argues that his testimony was entitled to enhanced credibility based upon his good work record.  "A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (citing Singletary v. Secretary of Health, Education and Welfare, 623 F.2d 217, 219 (2d Cir.1980)); see also SSR 96-7p (listing "prior work record and efforts to work" as factor in assessing credibility).

However, the ALJ largely credited Plaintiff's testimony, finding that it generally described an ability to perform the physical requirements of sedentary work.  This conclusion was supported by substantial evidence.

Sedentary work "is defined as involving only occasional standing and walking, the lifting of no more than ten pounds at a time, and the occasional lifting and carrying of light objects." Schaal v. Apfel, 134 F.3d 496, 501 n. 6 (2d Cir. 1998); see also 20 C.F.R. § 404.1567. "Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996) ("Sedentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday").

Although Plaintiff described discomfort associated with walking (T at 260, 262), he said that he could "walk as much as" he wanted.  In addition, he said that he was "okay" with sitting as along as he had "some room" to move his foot around. (T at 261).  Plaintiff also testified that he was a full-time student, which would involve many of the activities (e.g., sitting for extended periods, occasional lifting of light objects) associated with sedentary work.  There are also indications in the record that Plaintiff was able to go hiking and kayaking and exercised at a gym up to three times per week. (T at 106, 165, 167).

13

In sum, "[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

This Court finds the ALJ properly considered Plaintiff's pain and reported limitations, along with the medical and other evidence in the record. The ALJ properly exercised discretion to evaluate the credibility of Plaintiff's testimony, presented a fair summary of that evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. Substantial evidence supports the ultimate determination reached by the ALJ. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision in this regard should therefore be upheld.

### b.    New Evidence

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see

also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is [sic] contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b).

Even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Perez, 77 F.3d at 45. Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. Id. at 45-46. The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations. See 42 U.S.C. § 405(g) (sentence five); see, e.g., Woodford v. Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y.2000) (concluding that the "Appeals Council erred when it determined that [the new] evidence was insufficient to trigger review of the ALJ's decision").

In this case, Plaintiff argues that the Appeals Council should have considered deposition testimony from Drs. Apicella (his treating pain management specialist) and Dubin (his treating neurologist).  On August 22, 2007, several months after the ALJ rendered the decision in this matter, Dr. Apicella testified that Plaintiff had "now developed a neuropathy," which he described as "a derangement of the peripheral nerves." (T at 168-69).

On September 13, 2007, Dr. Dubin testified that Plaintiff underwent electrodiagnostic testing on June 20, 2007. (T at 201)  Specifically, motor and sensory nerve studies were conducted, which yielded abnormal results indicating "dysfunction or injury to the lateral plantar nerve component of the tibial nerve at the level of the ankle and also to the perineal

15

motor nerve at the level of the ankle." (T at 210-211, 215). Dr. Dubin opined that the nerve problems would cause numbness in Plaintiff's toes, weakness of the intrinsic foot muscles, difficulty balancing, and increased risk of trauma to the foot. (T at 216-218). Dr. Dubin believed that the injury was caused by Plaintiff's 2001 fall. (T at 222).

The deposition testimony of Drs. Apicella and Dubin was submitted to the Appeals Council, which concluded that it did not provide any basis for reversing the ALJ's decision. (T at 3-4, 6). The Commissioner argues that the Appeals Council was correct because the electrodiagnostic testing referenced in Dr. Dubin's deposition was conducted after the ALJ's decision was rendered and, thus, does not relate to the relevant period.[5]

This argument is somewhat misplaced. Examinations and testing conducted after the ALJ's decision is rendered may still be relevant if they clarify a pre-hearing disability and/or diagnoses. See Woodford, 93 F. Supp. 2d at 527. There is no indication that the neurological problems diagnosed by Dr. Dubin were newly developed. To the contrary, Dr. Dubin opined that they were causally related to the 2001 injury. Certainly, Dr. Dubin's testing results shed some light on the nature and source of Plaintiff's impairments and, in that sense, relate to the relevant time period.

However, it is for this reason that the Court finds the Appeals Council was nevertheless correct in concluding that the ALJ's decision did not need to be revisited. In other words, this Court agrees with the Commissioner, but for the opposite reason. Although, as noted above, Dr. Dubin's testing certainly provided more clarity about the

---

[5] An application for benefits is considered pending until the ALJ renders a decision. 20 C.F.R. §404.620 (a). Thus, a claimant must file a new application for impairments arising after the date of the ALJ's decision.

16

sources of Plaintiff's pain and numbness, there was no doubt prior to that point that Plaintiff was experiencing pain and numbness. The issue is whether those conditions rendered Plaintiff disabled under the Act during the relevant time period. Plaintiff has not offered any argument as to how Dr. Dubin's diagnosis operates to alter the fundamental conclusion reached by the ALJ, namely, that Plaintiff retained the residual functional capacity to perform sedentary work. Dr. Dubin's finding was essentially that Plaintiff was experiencing pain and numbness due to nerve damages and that the condition was stable at this point, but that it would be expected to deteriorate over the next ten to fifteen years. (T at 223, 236). Plaintiff has not shown how this finding (or, for that matter, the comments made by Dr. Apicella in his deposition) materially undermined or called into question the ALJ's ultimate conclusion. This Court concludes that the Appeals Council properly applied the regulations in concluding that the ALJ's decision was consistent with the evidence of record. See Green v. Barnhart, No. 07-CV-0023, 2009 WL 68828, at *9-10 (W.D.N.Y. Jan.6, 2009) (finding the Appeals Council satisfied their duty under 20 C.F.R. § 404.970(b) when it concluded that an MRI report did not provide an adequate basis to review the ALJ's decision because it "only reaffirmed the evidence in the record").

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including Plaintiff's treating physicians, and afforded Plaintiff's subjective claims of pain and other limitations an

appropriate weight when rendering a decision that Plaintiff is not disabled. The Court finds

no reversible error.  Because the Court further finds that substantial evidence supports the

ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on

the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be

DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,


Victor E. Bianchini
United States Magistrate Judge


Dated:    September 3, 2009

Syracuse, New York


## V. ORDERS


Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

**Clerk of this Court within ten(10) days after receipt of a copy of this Report &**

Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

September 3, 2009

Victor E. Bianchini
United States Magistrate Judge

19